1  **NICHOLAS & TOMASEVIC, LLP**
    Craig M. Nicholas (SBN 178444)
2      David G. Greco (SBN 299635)
   225 Broadway, 19th Floor
3  San Diego, California 92101
   Telephone:  (619) 325-0492
4  Facsimile:   (619) 325-0496
   Email: cnicholas@nicholaslaw.org
5  Email: dgreco@nicholaslaw.org

6  Attorneys for Plaintiff
   Champion Courage LLC

7

8              **UNITED STATES DISTRICT COURT**

9           **SOUTHERN DISTRICT OF CALIFORNIA**

10

11 CHAMPION COURAGE LTD., a          CASE NO.: __'17CV1855 AJB  BGS__
   British Virgin Islands Company,
12                                   **COMPLAINT FOR:**
           Plaintiff,
13                                   **(1)   BREACH OF CONTRACT;**
        vs.
14                                   **(2)   MISAPPROPRIATION OF**
   FIGHTER'S MARKET, INC., a               **TRADE SECRETS;**
15 Delaware corporation, and BRUNO
   MUNDURUCA, an individual,         **(3)   INTENTIONAL INTERFERENCE**
16                                         **WITH ECONOMIC**
           Defendants.                     **ADVANTAGE;**
17
                                     **(4)   FRAUD; *and***
18
                                     **(5)   UNFAIR BUSINESS PRACTICES**
19

20

21

22

23

24

25

26

27

28

---

1
COMPLAINT

Plaintiff CHAMPION COURAGE, LTD. brings this action against Defendants FIGHTER'S MARKET, INC., a Delaware Corporation, and BRUNO MUNDURUCA, an individual, and alleges as follows:

## I.    PARTIES

1.    Plaintiff Champion Courage, LTD. ("Champion Courage") is a British Virgin Islands Company.

2.    Defendant Fighters Market, Inc. ("FM") is a Delaware corporation doing business in the county of San Diego, California.

3.    Defendant Bruno Munduruca ("Munduruca") is an individual residing in San Diego County. Munduruca is an owner of defendant FM.

## II.    JURISDICTION AND VENUE

4.    Jurisdiction is proper in this court under the Defend Trade Secrets Act of 2016, 18 U.S.C. §§ 1836(b)(1) and 1836(d) which read:

> (b)(1)    An owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce.

> (d)    The district courts of the United States shall have original jurisdiction of civil actions brought under this section.

5.    Venue is proper in this court pursuant to 28 U.S.C. §§ 1391 and 1400 because, on information and belief, Defendants conduct business in this District and a substantial part of the events and omissions giving rise to the claims occurred in this judicial District and has caused damage to Plaintiff in this District.

## III.    ALLEGATIONS

6.    Champion Courage and FM both manufacture jiu-jitsu kimonos—garments used during jiu-jitsu fighting matches. To remain competitive, kimono manufacturers must continually innovate products that give their customers a competitive edge.

7.     On July 15th, 2013, FM entered a contract with Champion Courage while attempting to build a business relationship. The contract is attached to this complaint as Exhibit A. In relevant part, the contract reads:

> All proprietary and confidential information and/or otherwise made available to Fighters Market by "STORM Kimonos® / Champion Courage Limited," including all physical embodiments or repositories of such information, shall be and at all times remain the sole and exclusive property of "STORM Kimonos® / Champion Courage Limited.

> Fighters market will not, without the prior written consent of "STORM Kimonos® / Champion Courage Limited," disclose, publish, disseminate, divulge, or make available any proprietary and confidential information to any person or entity, nor shall Fighter's Market make or cause to be made, or permit or allow, either on its own behalf or the behalf of others, any use of the proprietary and confidential information delivered to or otherwise made available to it by "STORM Kimonos® / Champion Courage Limited."

8.     After execution of this contract, FM had access to all data and development materials related to Champion Courage's "Zero Hold Technology®" [sleeve]. As FM knows, "Zero Hold Technology®" is designed to make it more difficult for the wearer's opponent to maintain a grip on the wearer during a match.

9.     Champion Courage filed for a patent of "Zero Hold Technology®" in 2014. It has worked its way through the patent process. Champion expects to have the patent issued shortly. The patent application has already been published (U.S. Patent Publication 2016/0143374).[1]

---

[1] Remedies are available for infringement that occurs prior to issuance of the patent in accordance with 35 U.S.C. § 154(d), which provides "provisional rights" to a patent owner to claim reasonable royalties from an infringer for an infringement carried out after the publication of the patent application and before the patent is granted.  Relevant portions of 35 U.S.C. § 154(d) are recited below:

> "A patent shall include the right to obtain a reasonable royalty from any person who, during the period beginning on the date of publication of the application . . . and ending on the date the patent is issued (i) makes, uses, offers for sale, or sells in the United States the invention as claimed in the published patent application or imports such an invention into the United States; or (ii) if the invention as claimed in the published patent application is a process, uses, offers for sale, or sells in the United States or imports into the United States products made by that process as claimed in the published patent application; and (B) had actual notice of the published patent application and, . . . 2) Right based on substantially identical inventions."

10.     Champion Courage has invested heavily and aggressively to monetize its proprietary technology.   The features developed by Champion Courage are the first phase of a significant development program that Champion Courage has invested in.

11.     Despite this, FM has developed and marketed "NO-Grip Sleeve Technology," which exactly replicates Champion Courage's "Zero Hold Technology®". Champion Courage has access to documents evidencing that FM intentionally solicited the factory that produces Champion Courage's "Zero Hold Technology®" to produce FM's NO-Grip products. Champion Courage alleges on information and belief that Defendants colluded with the factory management to conceal the fact that Defendants' copied product was also being secretly manufactured at the same location.   Champion Courage staff and quality control were kept in the dark about Defendants' successful plot to secretly manufacture the copied product at the same factory.

12.     In other words, Champion Courage has access to documentary proof that FM duplicated its technology and then convinced Champion Courage's manufacturer to participate in the fraudulent production of the stolen technology.

13.     As recently as August 28th, FM infringed on Champion Courage's intellectual property rights by selling at a convention in Las Vegas kimonos featuring the stolen technology.   FM have also advertised the stolen technology on at least one of its Instagram pages, as depicted below.

---

Therefore, provided the invention as claimed in the patent is substantially identical to the invention as claimed in the published patent application, any infringement by FM of the claims in the patent publication can be pursued at the appropriate time by the patent holder. As such, the enclosed complaint will be amended to add retroactive patent infringement upon issuance of the patent.

1
2
3
4
5
6
7
8
9
10
11
12



13   14.   Tellingly, FM's Instagram post admits that FM were not developing
14   this technology until sixteen months ago—April 2016—nearly two years after
15   Champion Courage first sought to patent the technology.   This is being used
16   illegally by FM for two brands: Kingz and Maeda.

17   15.   Additionally, FM falsely represents in its marketing materials that it
18   utilizes "Coolmax" fabric in its products. However, Dupont—not FM—owns
19   Coolmax fabrics and FM does not have any ownership in that product, nor does FM
20   use Coolmax, at all.

21   16.   This pattern of stealing from other companies and making material
22   misrepresentations is FM's modus operandi, as can be gleaned from FM's use of
23   other brands' trademarked logos, colors and designs. FM has infringed on brands
24   such as Starbucks, Supreme, and Pokémon. These companies and their general
25   counsel have been notified of this infringement. This includes Dupont.

26   17.   FM's fraudulent conduct has already resulted in significant damage to
27   Champion Courage's ability to sell and market its own products. Champion
28   Courage's position in the marketplace as a leading brand and innovator of new

products has been undermined by Defendants' illegal schemes to violate the parties' contract and steal its technology.

18.    Champion Courage is not the only victim of FM's infringement. FM utilizes the designs of many other brands to promote its merchandise. These brands include Starbucks, Supreme, and Pokémon.

 

## IV.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### BREACH OF CONTRACT
### AGAINST ALL DEFENDANTS

19.    Plaintiff re-alleges & incorporates by reference all preceding paragraphs.

20.     On or about July 15, 2013, Champion Courage and FM entered the contract, in writing. The contract in relevant part prohibits Defendants from making any "use" of the proprietary and/or confidential information that would be delivered to or otherwise made available to them by Champion Courage.  The contract also contains an implied covenant of good faith and fair dealing.

21.    Champion Courage fulfilled and performed all the conditions, covenants, and promises required by it to be performed in accordance with the contract.

22.     Defendants breached the contract by using Champion Courage's confidential and proprietary information, in doing the acts described above.

23.     No party has been excused from performance of the contract.

24.     As an actual and proximate result of the conduct described herein, Champion Courage has suffered damage in an amount according to proof, but in excess of the jurisdiction of this Court.

### SECOND CAUSE OF ACTION
### MISAPPROPRIATION OF TRADE SECRETS
### AGAINST ALL DEFENDANTS

25.     Plaintiff re-alleges & re-incorporates all preceding paragraphs.

26.      Under the contract, Defendants were obligated to not use any proprietary or confidential information to their advantage. However, Defendants utilized their access to Champion Courage's "Zero Hold Technology®" to duplicate and re-brand the technology as their own, in violation of the contract.

27.     Plaintiff owns its "Zero Hold Technology®", which consists in part of information related to the research and development of its future and current products, business strategies, marketing goals, marketing analyses, and other financial information. Plaintiff expended a great deal of time and incurred a great deal of expense in obtaining its proprietary information and trade secrets. Further, the proprietary information and trade secrets derive independent economic value from their disclosure or use. Plaintiff has taken reasonable efforts to maintain the secrecy of this information.

28.     Further, Defendants violated the contract which required them to keep these trade secrets confidential and not use them for their own benefit.

29.     Defendants misappropriated the trade secrets by doing the acts described herein.

30.     As a direct and proximate result of Defendants' misappropriation of Plaintiff's trade secrets, Plaintiff has suffered and will continue to suffer actual damages in an amount to be proven at trial. Defendant will also be unjustly enriched

by being able to continue to sell and develop products based on Plaintiff's trade secret.

31.   In doing the acts described above, Defendants acted with malice, oppression, and fraud. Specifically, Defendants were willful and malicious in that they knowingly misappropriated Plaintiff's trade secrets with the deliberate intent to injure Plaintiff's business and improve their own.

32.   Defendants' wrongful misappropriation and use of Plaintiff's trade secrets, unless enjoined, threatens to cause great and irreparable injury to Plaintiff's business. Plaintiff has no adequate remedy at all for the potential and threatened injuries. Plaintiff is therefore entitled to a preliminary and permanent injunction under Federal Rule of Civil Procedure 65 and other applicable laws.

### THIRD CAUSE OF ACTION
### INTENTIONAL INTERFERENCE WITH ECONOMIC ADVANTAGE
### AGAINST ALL DEFENDANTS

33.   Plaintiff re-alleges & re-incorporates all preceding paragraphs.

34.   Under the contract, Defendants were obligated to not use any proprietary or confidential information to their advantage. However, Defendants utilized their access to Champion Courage's "Zero Hold Technology®" to duplicate and re-brand the technology as their own, in violation of the contract.

35.   In doing so, Defendants interfered with the prospective economic advantage Champion Courage would have in the market based on its proprietary technology.

36.   Champion Courage also alleges on information and belief that Defendants have been contacting Champion Courage's client base and representatives to interfere with these contractual relationships and economic opportunities.

37.   Defendants, in doing the acts described above, damaged Champion Courage in an amount per proof but in excess of the jurisdiction of this Court.

38.     Additionally, Defendants' conduct was willful, wanton, intentional, and malicious, such that it warrants an award of punitive damages against them.

**FOURTH CAUSE OF ACTION**
**FRAUD**
**AGAINST ALL DEFENDANTS**

39.     Plaintiff re-alleges & re-incorporates all preceding paragraphs.

40.     As alleged above, Defendants deliberately, willfully, and maliciously engaged in a scheme to defraud Plaintiff and the public at large, by doing the acts described herein.

41.     Defendants intended to, and did, mislead Plaintiff and the public. Defendants intended to, and did, profit from these fraudulent misrepresentations.

42.     As a proximate and actual result of the above, Plaintiff suffered damages per proof in an amount in excess of the jurisdiction of this Court.

43.     Additionally, Defendants' conduct was willful, wanton, intentional, and malicious, such that it warrants an award of punitive damages against them.

**FIFTH CAUSE OF ACTION**
**UNFAIR BUSINESS PRACTICES**
**AGAINST ALL DEFENDANTS**

44.     Plaintiff re-alleges & re-incorporates all preceding paragraphs.

45.     California Business & Professions Code sections 17200, *et seq.* (the "UCL") prohibits business practices which are "unlawful."

46.     Defendants, in doing the acts described above, have committed and continue to commit ongoing unlawful business practices within the meaning of the UCL.

47.     The unlawful practices have proximately and actually caused damages to Plaintiff.

48.     Defendants have profited from their unlawful business practices, continue to profit from those practices, and do not intend to cease their practices without intervention of this Court.

49.     Pursuant to the UCL, Plaintiff is entitled to restitution of money acquired by Defendants by means of such unlawful business practices, in amounts to be proven at trial.

50.     Plaintiff and the public are entitled to injunctive relief against Defendants' continuation of unlawful business practices.

51.     Plaintiff's success in this action will result in the enforcement of important rights affecting the public interest by conferring a significant benefit upon the public.

52.     Private enforcement of these rights is necessary as no public agency has pursued enforcement. There is a financial burden incurred in pursuing this action, and it would be against the interests of justice to require payment of attorneys' fees from any recovery in this action.  Thus, Plaintiff is entitled to an award of attorneys' fees and costs of suit under California Code of Civil Procedure section 1021.5.

## **PRAYER FOR RELIEF**

Plaintiff prays for judgement against Defendants, as follows:

1.     For compensatory and general damages, according to proof;

2.     For disgorgement of all monies illegally gained;

3.     For restitution according to proof;

4.     For an order enjoining Defendants from any further acts which violate the UCL;

5.     For an order enjoining Defendants from any further acts which infringe on the intellectual property of Plaintiff;

6.     For pre-judgment interest;

7.     For costs of suit;

8.     For reasonable attorneys' fees;

9.     For punitive damages; and

10.     For other such relief that this Court deems proper.

1

## <u>DEMAND FOR JURY TRIAL</u>

2      Plaintiff respectfully requests a jury on all triable issues.

3

4   Respectfully submitted:

5   Dated:  September 6, 2017                    **NICHOLAS & TOMASEVIC, LLP**

6

7                                        By:   */s/ David G. Greco*
                                              Craig M. Nicholas (SBN 178444)
8                                             David G. Greco (SBN 299635)
                                              225 Broadway, 19th Floor
9                                             San Diego, CA 92101
                                              Telephone: (619) 325-0492
10                                            Facsimile: (619) 325-0496
                                              Email:  cnicholas@nicholaslaw.org
11                                            Email:  dgreco@nicholaslaw.org

12
                                              Attorneys for Plaintiff
13                                            CHAMPION COURAGE LTD.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28