UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAMPION COURAGE LTD., a British Virgin Islands Company,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>FIGHTER'S MARKET, INC., a Delaware Corporation, and BRUNO MUNDURUCA, an individual,<br><br>　　　　　　　　　　　　Defendants. | Case No.: 17-cv-01855-AJB-BGS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>(Doc. No. 15) |

Pending before the Court is Defendants Fighter's Market, Inc. and Bruno Munduruca's (collectively referred to as "Defendants") motion to dismiss Plaintiff Champion Courage Ltd's[1] first amended complaint ("FAC"). (Doc. No. 15.) Pursuant to Civil Local Rule 7.1.d.1, the Court finds the motion suitable for determination on the papers and without oral argument. For the reasons explained more fully below, the Court

---

[1] Plaintiff states that it is a California Limited Liability Corporation. (Doc. No. 10 ¶ 1.) Defendants point out that this statement must have been made in error as there is no such thing as a limited liability corporation. (Doc. No. 15-1 at 3.) Moreover, Plaintiff's caption states that it is a British Virgin Islands Company. (Doc. No. 10 at 1.) In future filings, Plaintiff should clarify this inconsistency.

1

**GRANTS IN PART AND DENIES IN PART** Defendants' motion to dismiss.

## FACTUAL BACKGROUND[2]

Plaintiff and Defendant Fighter's Market, Inc. ("FM") both manufacture jiu-jitsu kimonos. (Doc. No. 10 ¶ 6.) On July 15, 2013, in an effort to foster a business relationship, FM entered into a contract with Plaintiff. (*Id*. ¶ 7.) In pertinent part, the contract reads:

> All proprietary and confidential information and/or otherwise made available to Fighters Market by "STORM Kimonos®/ Champion Courage Limited", [sic] including all physical embodiments or other repositories of such information, shall be and at all times remain the sole and exclusive property of "STORM Kimonos®/Champion Courage Limited". [sic]
>
> Fighters Market will not, without the prior written consent of "STORM Kimonos®/Champion Courage Limited", [sic] disclose, publish, disseminate, divulge or make available any proprietary and confidential information to any person or entity, nor shall Fighters Market make or cause to be made, or permit or allow, either on its own behalf or the behalf of others, any use of the proprietary and confidential information delivered to or otherwise made available to it by "STORM Kimonos®/ Champion Courage Limited". [sic]

(Doc. No. 10-1.)

After signing this contract, Plaintiff provided FM access to all its proprietary data and development materials related to its "Zero Hold Technology" sleeve, which is designed to make it difficult for the wearer's opponent to maintain a grip on the wearer during a match. (Doc. No. 10 ¶ 9.) Plaintiff has been testing and developing this technology since 2008 and is currently in the process of filing a patent for the technology in its current form. (*Id*. ¶¶ 10, 11.) Additionally, as part of the development process, Plaintiff sought to prevent the disclosure of the technology to the public or to others in the industry through the use of

---

[2] The following facts are taken from the FAC and construed as true for the limited purpose of resolving the motion to dismiss. *See Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247 (9th Cir. 2013).

non-disclosure agreements. (*Id*. ¶ 14.) Thus, according to Plaintiff, their Zero Hold Technology in its current form has been kept extremely confidential and was not known to the public prior to Defendants signing the contract. (*Id*.)

Following FM and Plaintiff's non-disclosure agreement, FM developed and marketed its "NO-Grip Sleeve Technology," which exactly replicates Plaintiff's "Zero Hold Technology." (*Id*. ¶ 16.) Additionally, Plaintiff claims that FM intentionally solicited the factory that produces its technology and colluded with the factory's management so as to conceal the fact that it was secretly making the same product. (*Id*.) In August of 2017, FM continued to infringe Plaintiff's intellectual property rights by selling the purportedly stolen technology at a convention in Las Vegas. (*Id*. ¶ 19.) In sum, Plaintiff argues that FM would not have been able to develop their No-Grip technology without having access to Plaintiff's proprietary and confidential information. (*Id*. ¶ 18.) As a result of Defendants' fraudulent conduct, Plaintiff's ability to sell and market its own products has diminished and it has been significantly damaged. (*Id*. ¶ 23.)

Plaintiff filed its complaint on September 12, 2017, alleging causes of action for (1) breach of contract; (2) misappropriation of trade secrets; (3) intentional interference with economic advantage; (4) fraud; and (5) unfair business practices. (Doc. No. 1.) Shortly thereafter, Defendants filed a motion to dismiss. (Doc. No. 7.) In response, Plaintiff filed its FAC on October 26, 2017. (Doc. No. 10.) On November 15, 2017, Defendants filed the instant action, their motion to dismiss. (Doc. No. 15.)

## **LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court may dismiss a complaint as a matter of law for: "(1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). However, a complaint survives a motion to dismiss if it contains "enough facts to state a

claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Notwithstanding this deference, the reviewing court need not accept legal conclusions as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for the court to assume "the [plaintiff] can prove facts that [he or she] has not alleged . . . ." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The court only reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

## DISCUSSION

A.  Defendants' Request for Judicial Notice

Defendants request judicial notice of (1) Plaintiff's U.S. Patent and Trademark Office application for the mark "Zero Hold Technology"; (2) the California Secretary of State filings for Champion Courage LLC; (3) California Secretary of State print-outs; (4) the relevant trademark and patent registrations for STORM KIMONOS; and (5) office actions and amendments filed in the pertinent patent application. (Doc. No. 15-2.)

Federal Rule of Evidence 201 provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

The Court finds judicial notice of the filings with the USPTO and the various print-outs from the California Secretary of State website warranted as their accuracy can be readily determined from other reliable sources. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record."); *see also Balance Studio, Inc. v. Cybernet Entm't, LLC*, No. 15-cv-04038-DMR, 2016 WL 1559745, at *1 n.2 (N.D. Cal. Apr. 18, 2016)

(taking judicial notice of USPTO records as they are "records and reports of administrative bodies."); *L'Garde, Inc. v. Raytheon Space and Airborne Sys.*, 805 F. Supp. 2d 932, 938 (C.D. Cal. 2011) (finding judicial notice of records searches from the State of California corporate search website justified as the documents could be "determined by readily accessible resources whose accuracy cannot reasonably be questioned."). Therefore, the Court hereby **GRANTS** Defendants' request and takes judicial notice of the content attached as exhibits one through nine listed in their motion.

B.  Defendants' Motion to Dismiss

Defendants vehemently argue that each of Plaintiff's causes of action are merely vague and conclusory statements that fail to state a claim that is plausible on its face. (*See generally* Doc. No. 15-1.) Plaintiff challenges Defendants on each point. (*See generally* Doc. No. 16.)

At the outset, the Court finds it in the interests of judicial efficiency to reject two of Defendants' arguments. Defendants repeatedly assert that (1) Plaintiff's trademark application states that its "anti-grip" features became available at least as early as March of 2012; and (2) the patent prosecution file demonstrates that Plaintiff's purportedly confidential technology is "actually an unoriginal idea that is not patentable," and thus Plaintiff's FAC is implausible. (Doc. No. 15-1 at 11, 13.) Unfortunately, the Court finds both arguments plainly defective.

As to the first contention, Defendants have mischaracterized the evidence.[3] After reviewing the judicially accepted documents, the Court illustrates that the Trademark Application for "Zero Hold Technology" states that "<u>the mark</u> was first used by the applicant" at least "as early as 03/26/2012." (Doc. No. 15-2 at 8 (emphasis added).) Thus, unlike Defendants' characterization of the document, it was the actual trademark and not the technology that was first used as early as March of 2012.

---

[3] The Court notes that despite providing over fifty pages of judicially noticed documents, Defendants' motion fails to cite to the record. (*See generally* Doc. No. 15-1.)

5

Next, the Court finds Defendants' arguments revolving around the patent prosecution file meritless. Defendants place a large emphasis on the USPTO's rejection of various claims asserted in Plaintiff's patent application. (Doc. No. 15-1 at 13.) From these actions, Defendants then deduce that without a patent, Plaintiff's various allegations in the FAC are implausible. (*Id*. at 13–14.) Curiously, Defendants fail to provide any case law to demonstrate that the denial of a patent application renders Plaintiff's breach of contract and misappropriation of trade secret claims unfeasible under Federal Rule of Civil Procedure 12(b)(6). Moreover, the Court is unpersuaded by the arguments. Thus, without more, the foregoing assertions amount to nothing more than Defendants' own musings.

The Court now focuses on the remainder of Defendants' contentions in support of their motion to dismiss Plaintiff's FAC.

### i. **Plaintiff's Breach of Contract Claim is Adequately Pled**

Defendants assert that Plaintiff's breach of contract claim should be dismissed as there are no factual allegations that demonstrate that they used any of Plaintiff's confidential information. (Doc. No. 15-1 at 10.) In opposition, Plaintiff "cuts and copies" paragraphs 15–18 of its FAC into its brief to demonstrate that its breach of contract claim is adequately pled. (Doc. No. 16 at 5.)

To state a claim for breach of contract under California law, "a plaintiff must plead the contract, plaintiffs' performance (or excuse for nonperformance), defendant's breach, and damage to plaintiff therefrom." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1028 (N.D. Cal. 2012) (citation and internal quotation marks omitted).

Taking all of the allegations as true, the Court finds that Plaintiff has sufficiently pled its claim for breach of contract. The Court notes that at this stage of the litigation, Plaintiff need only plead enough facts to allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citation omitted).

Presently, Plaintiff's FAC alleges that Defendants breached the terms of the non-disclosure agreement signed on July 15, 2013. (Doc. No. 10 ¶ 15.) Specifically, Plaintiff

contends that Defendants utilized its proprietary information, obtained after executing said contract, to design their "No-Grip Sleeve Technology"—a technology that allegedly replicates Plaintiff's "Zero Hold Technology." (*Id*. ¶¶ 16, 18.) Further, Plaintiff argues that it has documents that demonstrate that Defendants colluded with Plaintiff's processing factory so as to secretly manufacture their product at the same location. (*Id*. ¶ 16.) In its current form, Zero Hold Technology is purportedly not known to the public or to others in the industry as it was kept extremely confidential by Plaintiff. (*Id*. ¶ 14.) Moreover, Plaintiff claims that Defendants would not have been able to develop their competing technology without access to Plaintiff's confidential data. (*Id*. ¶ 18.)

These factual allegations are not boilerplate, but have enough factual specificity to establish the elements for a breach of contract claim. *See Sensible Foods, LLC v. World Gourmet, Inc.*, No. 11-2819 SC, 2011 WL 5244716, at *5 (N.D. Cal. Nov. 3, 2011) (dismissing the plaintiff's breach of contract claim as it only alleged mere recitation of the elements of a breach of contract cause of action, such as "Defendants failed to perform all of the conditions . . . required of them under the confidentiality agreements, including, but not limited to disclosing all or a portion of Plaintiff's Confidential Information . . . ."); *see also Jun-En Enter. v. Lin*, No. CV 12-2734 PSG (Ssx), 2012 WL 12886499, at *3 (C.D. Cal. Oct. 17, 2012) (holding that the plaintiffs' allegations that demonstrated the terms of the Agreement and how the defendants breached those terms were "sufficient to state a claim for breach of contract" under the "simplified pleading standard of the Federal Rules of Civil Procedure[.]").

Consequently, Defendants' motion to dismiss Plaintiff's breach of contract claim is **DENIED**.

    **ii.**     **Plaintiff's Trade Secrets Cause of Action Fails to Plead a Cognizable Claim Upon Which Relief Can be Granted**

Defendants assert that Plaintiff's misappropriation of trade secrets claim under the Defend Trade Secrets Act of 2016 ("DTSA") is implausible as there are no allegations that demonstrate that the purported confidential information was secret by the time Defendants

7

17-cv-01855-AJB-BGS

allegedly used the information. (Doc. No. 15-1 at 12.) In opposition, Plaintiff points the Court to paragraphs 6, 9, 11, 12, and 14 in the FAC to argue that its cause of action for misappropriation of trade secrets is properly pled. (Doc. No. 16 at 4.)

Despite the various arguments produced in Defendants' motion to dismiss, the Court finds dismissal of this claim appropriate based on different reasons. District courts in the Ninth Circuit have held that the DTSA only provides a cause of action for acts that occurred on or after the date of its enactment—May 11, 2016. *Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*, No. 15-CV-02177-SI, 2017 WL 1436044, at *3 (N.D. Cal. Apr. 24, 2017). Plaintiff's FAC alleges that it and FM signed a non-disclosure agreement on July 15, 2013. (Doc. No. 10 ¶ 7.) Additionally, Plaintiff states that FM's Instagram posts admit that FM began developing the technology in April of 2016. (*Id*. ¶ 20.) It is clear that both of these dates occurred prior to the DTSA's enactment date. Thus, as currently pled, Plaintiff's DTSA claim is not viable. *See Wang v. Golf Tailor, LLC*, No. 17-cv-00898-LB, 2017 WL 2861111, at *4 (N.D. Cal. July 5, 2017) (explaining that as Golf Tailor had lost any trade secrets that it had in its product prior to May 11, 2016, its DTSA claim should be dismissed).

On a side note, the Court highlights that the FAC also contends that on August 28, 2017, Defendants infringed on Plaintiff's intellectual property rights by selling kimonos in Las Vegas featuring the purportedly stolen technology. (Doc. No. 10 ¶ 19.) However, though this incident happened after the DTSA's enactment date, the Court notes that "where a purported trade secret was publicly disclosed before the effective date of the DTSA, the plaintiff [can] not rely on a theory that the same information was again disclosed after the effective date because 'disclosure,' by definition, implies that the information was previously secret." *Physician's Surrogacy, Inc. v. German*, No. 17cv718-MMA (WVG), 2018 WL 638229, at *5 (S.D. Cal. Jan. 31, 2018) (citing *Avago Technologies U.S. Inc. v. Nanoprecision Products, Inc.*, No. 16-cv-03737-JCS, 2017 WL 412524, at *9 (N.D. Cal. Jan. 31, 2017)). Thus, even employing this later date, Plaintiff's claims under the DTSA are not adequately pled.

Consequently, the Court **DISMISSES** Plaintiff's DTSA cause of action.

### iii. Plaintiff's Intentional Interference with Economic Advantage Claim is Insufficiently Pled

The elements of a claim for intentional interference with prospective economic advantage are: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003) (citation omitted). "[T]he third element [] requires a plaintiff to plead intentional *wrongful* acts on the part of the defendant designed to disrupt the relationship." *Id*. at 1154 (emphasis in original).

Defendants assert that Plaintiff's cause of action fails on the second, third, fourth, and fifth prongs stated above. (Doc. No. 15-1 at 15.) In opposition, Plaintiff again, without any analysis or supporting case law, points the Court to certain paragraphs in the FAC to support its claim—paragraphs 17, 23, 44, 45, 46, 47, and 49. (Doc. No. 16 at 6–7.)

One of the major deficiencies with this cause of action is Plaintiff's failure to adequately plead element four. To plead "actual disruption of the relationship," Plaintiff alleges that "Defendants <u>intended to</u> disrupt the relationships that Plaintiff had with retailers," "Defendants interfered with the prospective economic advantage [Plaintiff] <u>would have</u> in the market based on its proprietary technology," and based on information and belief "Defendants have been contacting [Plaintiff's] client base" to "interfere with these contractual relationships[.]" (Doc. No. 10 ¶¶ 46–48 (emphasis added).) In general, these vague and speculative assertions do not adequately demonstrate an actual disruption of the relationship between Plaintiff and its retailers, distributors, or customers. As a result, this cause of action is **DISMISSED**. *See Sebastian Int'l, Inc. v. Russolillo*, 128 F. Supp. 2d 630, 637 (C.D. Cal. 2001) (explaining that actual disruption allegations need to be "more than 'merely a hope of future transactions.'") (citing *Brown v. Allstate Ins. Co.*, 17

9

F. Supp. 2d 1134, 1140 (S.D. Cal. 1998)); *see also Sky Billiards, Inc. v. Wolvol, Inc.*, No. 5:15-CV-02182 RGK (KKx), 2016 WL 7479428, at *3–4 (C.D. Cal. July 11, 2016) (explaining that the element of actual disruption had been adequately pled as the plaintiff alleged that the defendant submitted a false sellers' infringement allegation form to Amazon about the plaintiff, which resulted in plaintiff's listings being removed by Amazon and lost sales of $250,000).

### iv. Plaintiff's Fraud Claim does not Meet the Heightened Pleading Standard of Rule 9

Defendants argue that Plaintiff's fraud allegations, as a whole, do not rise to the heightened pleading standard proscribed by Federal Rule of Civil Procedure 9(b) and thus must be dismissed. (Doc. No. 15-1 at 16.) The Court agrees.

The essential elements of a claim for intentional misrepresentation are "(1) a misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance, (4) actual and justifiable reliance, and (5) resulting damage." *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 230–31 (2013). "Each element of a fraud count must be pleaded with particularity so as to apprise the defendant of the specific grounds for the charge and enable the court to determine whether there is any basis for the cause of action . . . ." *Cisco Sys., Inc. v. STMicroelectronics, Inc.*, 77 F. Supp. 3d 887, 897 (N.D. Cal. 2014); *see also* Fed. R. Civ. P. 9(b) (explaining that a plaintiff must plead intentional misrepresentation with particularity).

As currently pled, none of the above-mentioned factors have been satisfactorily alleged pursuant to Rule 9. For example, taking just the first factor—misrepresentation—Plaintiff claims that "Defendants intentionally and willfully made false statements regarding their intent to enter a working relationship with Plaintiff." (Doc. No. 10 ¶ 54.) Additionally, Plaintiff asserts that Defendants "sought to mislead the public into believing that they developed their infringing technology[.]" (*Id.* ¶ 53.)

Unfortunately, these anemic and conclusory arguments are not "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud

charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Thus, without more, Plaintiff's intentional misrepresentation cause of action lacks the specificity required under Rule 9(b) and is **DISMISSED**. *See Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (holding that claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.") (citation omitted); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged.").

    v.    **UCL CLAIM**

Defendants request dismissal of Plaintiff's UCL claim on three grounds: (1) Plaintiff has no standing; (2) Plaintiff has failed to allege the laws from which it is borrowing to support its UCL claim; and (3) Plaintiff's restitution claim is implausible. (Doc. No. 15-1 at 18–20.)

California's Unfair Competition Law provides a cause of action for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent. Cal. Bus. & Prof. Code § 17200, *et seq*. "The UCL's coverage is sweeping, and its standard for wrongful business conduct intentionally broad." *Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1204 (N.D. Cal. 2014) (citation and internal quotation marks omitted).

The main shortcoming to Plaintiff's UCL claim is its failure to identify the section or statute that was violated. Plaintiff argues that the various allegations revolving around Defendants purported violation of the DTSA satisfies this element. (Doc. No. 16 at 8.) The Court disagrees. Case law makes clear that a UCL claim of any kind "must identify the particular section of the statute that was violated, and must describe with reasonable particularity the facts supporting the violation." *Baba v. Hewlett-Packard Co.*, No. C09-05946 RS, 2010 WL 2486353, at *6 (N.D. Cal. June 16, 2010) (citation omitted); *see also Penermon v. Wells Fargo Bk., N.A.*, 47 F. Supp. 3d 982, 1002 (N.D. Cal. 2014) ("In order to state a claim for UCL, Plaintiff must identify an underlying statute that Defendant

violated.").

Presently, the FAC only simply contends that Plaintiff has been harmed by Defendants' "unfair business practices." (Doc. No. 10 ¶¶ 61–63.) The Court is then left to discern what certain allegations support Plaintiff's claim of "unfair business practices." This bare pleading supporting the statutory elements provides not the slightest inference that Plaintiff's UCL claim is sufficiently pled. Thus, in this respect, as Plaintiff has failed to identify a specific statute, its UCL claim is **DISMISSED**.[4] *See Saldate v. Wilshire Credit Corp.*, 686 F. Supp. 2d 1051, 1067 (E.D. Cal. 2010) ("The complaint lacks reasonable particularity of facts to support a UCL claim.").

## **CONCLUSION**

For the reasons stated, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion to dismiss. Plaintiff has **twenty-one (21) days** from the date of this Order to file a second amended complaint that cures the deficiencies outlined herein. Failure to file an amended complaint will result in dismissal of this action.

**IT IS SO ORDERED**.

Dated: April 24, 2018

Hon. Anthony J. Battaglia
United States District Judge

---

[4] Plaintiff's opposition brief states that its UCL claim is based off California's False Advertising Law. (Doc. No. 16 at 8.) However, this statement is not only too broad but most notably, is not alleged in Plaintiff's operative complaint. Thus, the Court cannot take it into consideration. *See Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1021 (C.D. Cal. 2015) (holding that in deciding a motion to dismiss, the Court cannot "consider evidence outside the pleadings . . .").